We have our last case of today. It's number 20-1878 in rain whites in Ray Weinstein Company Holdings LLC. It's why movie LLC at all, but the appellants and Mr Kleiman and Mr Califano Mr Kleiman. Thank you, Your Honor. Your Honor for the record Robert Kleiman of Gibson done on behalf of the appellants. I'd like to reserve four minutes for rebuttal if okay with Your Honor, not a problem. Your Honor. This is a basic matter of contract interpretation a contract that spyglass negotiated and drafted the asset purchase agreement provides that spyglass purchase all assets of the debtors of whatever kind except for excluded assets. One of the key categories was assumed contracts and to understand what an assumed contract is. We have to look at the specific language of the APA and not fall back on bankruptcy vernacular that it's only an executory contract that can be assumed or rejected. Can I ask a predicate question which may be a digression but There was a claim or you have a perfected security interest in the movies gross receipts and there's an obligation and the gross receipts secure it. So we're financing statements filed. Your Honor. There's nothing in the record that indicates the financing statements filed the security agreements that are that are referenced in certain of the investment agreements only secure the payment of an uncertain stream of payments based out of potential gross receipts that were entirely speculative. And the testimony the undisputed testimony in the case, Your Honor from Mr. Birmingham and the debtor schedules of assets reflected these investment agreements were accounted for as investment agreements. They were not loans or debts. They were accounted for as investments on the books and records of the parties and there's no due date for payment. No interest rate. No amortization schedule, etc. Yeah, that actually leads to my next point. It seems in connection with both the bankruptcy court and the district court again as an aside. They were treating these as if they were somehow In effect loans that you would think of in a commercial context. I didn't see that. As your honor. We didn't either and that that's the hinge point of the district court opinion where there was, you know, absolutely clear, you know, on a review of de novo that needs to be reversed the district court only looked at this as a liability. Yeah, but I thought I thought the bankruptcy court really did that as a an alternative not necessarily a linchpin maybe maybe the district court judge in your yard to put more emphasis on it, but I don't think Judge Judge Walrath did she. Your honor. I was focused on what the district court opinion was the district court. Did you know everything flowed from the district court that since this was not an executory contract. It had to be some kind of liability. But in fact, based on the contract as drafted by spyglass the assumed contract list actually contains executory and non executory contracts and I'd like to parse through the language of section 2.8 a because it's all it takes a little bit of work to get to the right answer. The first step under 2.8 a is that the parties agree that they would create a list of contracts called the available contracts from executory contracts, but they further recognize and this is a 47 that this initial list of contracts may not be complete as of the date the parties executed the APA. So third, the parties agreed in the text of section 2.8 that spyglass could update this assumed contract list by adding additional contracts. Now, that's not executory contracts contracts is a defined term at 897 that includes any written contract lease license agreement or arrangement. And in fact, using this provision spyglass added a number of non executory contracts to the list of assumed contracts, the assumed contract list could be modified. It looked to me as if in 2.8 a. That only executory contracts. Are available contracts that can be designated for assumption and obviously both sides agree that we don't have an executory contract here. So, your honor, that's the 1st step that I referenced. But didn't the 2nd amendment. Put the word executory in front of contracts. In the sentence that begins all contracts to the seller parties that are listed on 2.8 a of the disclosure schedule, etc. And I thought the word executory was added in that was added at the later part of that section to talk about how spyglass can deal with executory contracts. That provision was corrected by the 2nd amendment to provide that executory contracts that are listed on 2.8 a which is the assumed contract list. The buyer has the opportunity to designate them for assumption or rejection that does not change the language above or the behavior of spyglass. That non executory contracts can be put on the assumed contract list and we know that your honor just by looking at the assumed contract list. The assumed contract list had all of the investment contract. The investment agreements on them as well as the cone agreement that you just heard argument about. Then subsequently, uh, prior to the agreement was specifically. Purchased under 363, was it not? Your honor, it was specifically purchased, but so were these contracts and if I can have a minute to explain. Yeah, because my concern, I don't see any affirmative indication. That's why glass wanted to purchase the investment agreements. Well, your honor, there are 2 places where that's, um, I think the record reflects otherwise. The 1st is in the asset purchase agreement spyglass made an affirmative statement that they were going to purchase all assets of the debtors, including the assumed contracts. The assumed contracts, which is on schedule 2.1 refers back to this list that was created. That includes executory contracts and non executory contracts. That's 1 answer to your question. The 2nd answer is that if we look at the June statement, which is at a 678. At paragraph 7, it reads notwithstanding that the contract set forth on exhibit. They are not executory contracts. And are not being assumed and assigned pursuant to section 365 of the bankruptcy code. The access purchase agreement provides for the purchase by lantern of any rights or assets transferred to the debtor pursuant to such contracts. And so judge Walrath held below that if you're going to take contracts pursuant to section 363, you take all of the prospective obligations as well. Your honor, this is a situation where spyglass had unmitigated discretion to decide what to put on that assumed contract list and whatnot. And what to remove from it prior to closing. And the APA only allows a change to the schedule for non for executory contracts post closing. Spyglass instead says, well, wait a minute. That doesn't make any sense, even though it was on the list. It didn't have any value to us. But the contract, when it talks about the assets that are being purchased, does not contain any materiality threshold. In many other instances during throughout the APA, spyglass said things have to be material or there's material obligations. But with respect to the contracts on this list, they could have put them on the schedule or not. And they kept them on it just like they did with the cone agreement. Did any of the investors reach out to spyglass or the debtors prior to January of 2019 and say, hey, I think these are obligations you should assume or I think you already assumed them. I'm not aware of that, your honor. And that's not part of the record. You know, the the contract was playing the contracts would be the investment agreements were put on that schedule. And as of the closing date, they were not off that schedule. There was nothing to call and say, are you sure? Because the contract language was plain and unambiguous. And in fact, the November contract notice listed at least half of the investment agreements as excluded contracts. And no one immediately filed an objection to my knowledge. Your honor, that was a post-closing notice that, in fact, I'm reasonably certain that that was not served properly. But in any event, you know, once that had no effect because they can't change the terms of the asset purchase agreement and section 2.8, a which fixed the contracts that they were going to take the capital C contracts by a post-closing notice. And in fact, the November notice that was referenced was authorized pursuant to a provision of a sale agreement that expressly referenced executory contracts. And the notices, as Mr. Califano pointed out, don't say that they're an admission that they're an executory contract or not an executory contract. So that that was a notice that was authorized with respect to executory contracts. And we have not taken the position that our contracts were executory. They were assets. Mr. Califano may quibble about the value of those assets, but they were certainly assets as identified on the debtor schedules of assets and on the assumed contracts list. How can it be a defined term asset for the estate? Normally, assets have some value for the estate. So what's the value here? Well, your honor, the let me address that in two ways. The first is they identify them as assets. We didn't have to litigate over whether there was value, how much value there was, because they made a decision to put them on that schedule, which by the terms of such schedule 2.1 was a purchase asset. If it's on the assumed contract list, it's a purchase asset. The debtors put the contracts on their list of contracts as assets. There are there were benefits. There were things under the contract as of the petition date that were not quantified in identification, confidentiality rights and the like. There's there's no evidence that those were not valuable to to spyglass. And in fact, there was no need to put out that evidence on because it was spyglass that drafted this agreement. Spyglass that put it on the list, spyglass that didn't take it off the list. And even if you go all the way through to November, we think that's not appropriate. At least some of them were taken off the list, were they not? Your honor, they were not taken off the list prior to the closing. There was the June. What was the date of the closing? The closing, I think, was in July, July. So the asset purchase agreement was March 19 and the closing was July. Right. And the closing had a provision that the buyer may in its discretion determine not to assume any available contracts previously designated as an assumed contract. Now, I realize available contracts have to be executory, but you're saying these non-executory contracts were assumed and not really taken off. So, therefore, they're bound by them, even if there might not be any value in them to spyglass. Is that correct? I would say I would say that a little differently. Your honor. They put non-executory contracts on the assumed contract list. They purchased those contracts and all of the obligations and liabilities under those contracts by the terms of the agreement. There's no requirement under the asset purchase agreement that these contracts hit a certain value materiality threshold. There's none. Spyglass could have put it in. Spyglass could have taken these off the list. There weren't so many contracts on the list that it was impossible to go through and identify what contracts they wanted to keep and what they did. They drafted it. This was their agreement. So would you agree that if they took the investment agreements off the list prior to the closing? You don't prevail. I would say that with respect to the contracts that were not on the June statement, we would not prevail if they had taken them off the assumed contract list for purposes of the argument that we're currently making. We think, your honor, that there are ancillary arguments that they were title agreements or contract rights. But that's not the main thrust of our agreement. We think that the plain language of the agreement provides that if they were on that assumed contract list and they didn't take it off for non-executory contracts prior to the closing, they have to live with a specific language that they drafted and negotiated. And we know that they knew that there was a difference between executory and non-executory contracts by virtue of the Second Amendment and the fact that in Section 2.8a, the words executory contract appeared once before the amendment and the word contract without a modifier of executory appeared three times. And after the amendment, the words executory contract appear twice. But contract, capital C, without the modified language still remain, confirming that the assumed contract list included executory and non-executory contracts. All right. Well, do my colleagues have any questions? No. OK, at this point, why don't we hear from Mr. Califano and we'll get you back on rebuttal. Thank you, your honor. Thank you, your honor. Your honor. First of all, I think we've got to recall there was testimony. There was a witness at this hearing in front of the bankruptcy court. It was why movies witness it was Mr. Birmingham. And he his testimony was pretty revealing. OK, first of all, when we go to whether or not this is a debt as opposed to an unnamed, unspecified kind of investment. His testimony is what led the district court and bankruptcy court to conclude that this was an instrument for the payment of money. He testified that there was a maturity. Well, I think that points it's not on the table at this point. Let's is it your position you try to redesignate all of the investment agreements as excluded contracts, but perhaps accidentally missed a few. Is that what it's a point that we intended to designate all of the investment agreements as non-assumed contracts, that the investment agreements were not assets. They were liabilities and that any manipulation of the language here and the history here doesn't change the facts so that my client would have assumed a liability for which it got no corresponding benefit. OK, and Mr. Mr. Birmingham's testimony is pretty clear about the available benefit to my client. If we look at the provisions of the agreement. And as I said in the last appeal, you put it in context, trying to buy these assets without what comes with it, which were all the problems of the Weinstein companies. And not only, you know, the very public allegations, but the fact that this company was run in a manner which led to Chapter 11. So what is what is what is what is your primary argument? My primary argument, Your Honor, is that these were not assumed contracts, that the even the parties cannot render a non-executory contract executory, that these were debt obligations and that the language of the asset purchase agreement. How could these be debt obligations? Your Honor, you can have a non-recourse debt obligation. This had all the indicia of debt, as the Bankruptcy Court and District Court found. It had majority dates, it had guarantees and some of them had security interests. What you can't have a security interest for something which is not a debt. You cannot have a guarantee for something which is not a debt. But apparently there were no financing statements filed. So it's even if there was debt, it was unsecured, right? Yes, but it doesn't that doesn't change whether if it's if it's an unperfected security interest, doesn't change the fact that a security interest is only granted in connection with debt. OK, I thought I thought one of your primary arguments is that the investment agreements are not purchased assets because they are not excluded assets or because they are excluded as they are excluded assets. And one of the and they are excluded assets. And there is no asset that goes with these agreements. Now, the point I'm trying to make is that looking in the context of the order, Your Honor, for an assumption of an obligation like this, especially when the excluded liabilities include any indebtedness for borrowed money, loans or facilities or the debt instruments. Any assumption would have to be clear and unequivocal. And if you look at the language of the order itself, which has the broad, typical Delaware exclusion language, it excludes any liability which this could arguably fall into. For example, a paragraph of the order, it not only disclaims liability for debt, but for any interest, any ownership interest in any assets or any interest related to any assets. So whatever these agreements are, we think they're debt. They argue that it's an investment agreement, but investment agreement is either debt or equity. They clearly fall within the category of liabilities. Which are excluded. And for a liability like this to be assumed. In the face of the other language. Excluded assets are what on schedule 2.2. Is that correct? Yes, Your Honor. And are the investment agreements noted or not noted there? Your Honor, I would go to the, you know, the definition and 2.2. And these agreements, in our opinion, fit clearly within that definition. Okay. Actually, what seemed to be a stronger argument would be under 2.4. That notwithstanding any provision, buyer is assuming only the assumed liabilities. And is not assuming any other liability of any seller party of whatever nature. All such liabilities shall be retained by and remain liabilities of the seller parties. And that's what I was referring to, Your Honor. I'm sorry. That's what I was referring to. 2.4c. Okay. And the language of the sale order. The free and clear language. Which the order recites was important to my client. And was important to the purchase. The free and clear language was of extreme importance. In addition to 2.4c, I would think you might want to look at 2.4f. Yes, Your Honor. That is another one of our points. It is not an assumed contract. The definition of assumed contract is a subset of available contracts. And available contracts are clearly executory contracts. The tortured argument by appellant here is that somehow the parties agreed to treat this non-executory contract as an executory contract. There is no evidence of that. There is nothing they can point to other than. So can you just address your opposing counsel's point that a reading of 2.8 defines available contracts first as only executory contracts. But then after that initial definition broadens it to all contracts? I don't believe that that's an accurate reading of that provision. Okay. Just walk through that, would you? I think in that provision available contracts are always executory contracts. I think the parties recognized. It's weird to have later cure provisions for non-executory contracts maybe. I mean that's later parts along the way. Maybe that's standard. It struck me as a little weird to have cure provisions for non-executory contracts. Is that common? No, Your Honor. I don't see. I mean I'm not following you that you believe that there is a cure course for non-executory contracts. You would not have. I was kind of completing the thought for you. If this only applied to executory contracts or included non-executory contracts, why would there be cure provisions later? I'm sorry, Your Honor. I was confused. I was confused by your question. Well, I was so confused. But I interrupted you, so just. No, no. It's our position that 2.8 only relies, and all the provisions in 2.8 only relate to executory contracts because assumed contracts are a subset of available contracts, and the language there says executory contracts, okay? So there is no broadening of the scope later on, Your Honor, because everything that, as you said, relates to indicia of executory contracts causing notices to parties. The reason why you have to send a notice to a party of the assumption is so that they can contest the cure. And the bankruptcy judge recognized that what happened here was a standard practice that she has seen in dozens of cases over the 20 years that she's been on the bench. And she pointed that out to Wymovie in pointing out the disclaimer. Now, the bankruptcy court recognized that assumed contracts were a subset of available contracts. The district court recognized that assumed contracts were a subset of available contracts, which is limited to executory contracts. And Wymovie has never been able to explain why that doesn't preclude their argument about the assumption. I mean, the hardest point for you is about, on 2.8a, about, let me think, 1, 2, 3, 4, 5, about six lines down, and it says to add any contracts not included on such schedule as of the execution date. And any contracts doesn't say any executory contracts. It seems to suggest it could be any executory or non-executory contracts. And so that seems to be the hardest – maybe it's your opponent's strongest point. Yes, Your Honor. But so it seems to me that you've got – one of the easiest ways for you to prevail would be to say the only reasonable way to read any contracts would to read any contracts as meaning any executory contracts, not any executory and non-executory contracts. And that was the point I was making very poorly, I guess. But there is a reference to executory contracts in the very first sentence in this paragraph. There is no reference to non-executory contracts. Now, maybe – It's weird, though, because that first sentence says all executory contracts, and then six lines down it says any contracts without the modifier of executory. I mean this would be a much easier case if there was just the modifier add any executory contracts. I don't think we're here today. Yes. If you look at it – But at least on this issue we aren't here today. But you have to look – The second amendment to the APA add the word executory on the sixth line in addition to adding it toward the latter part of 2.8a. Right. And I don't think that's an indication that the earlier language – that there's a change, Your Honor. I think that's a clarification. I think that – No, I'm asking a fact question. Was the second amendment that had added the word executory before contracts in both places where previously it did not appear? Yes, Your Honor. Okay. Okay. And I think that is a clear indication of what was intended here. Okay. And that was fixing, you know, the possible ambiguity that not having it in the original contract in those places meant. But, I mean, that amendment fixes it. But even if you don't think about the amendment and you look at what this paragraph does and the fact that it's a discussion of cure amount and the right to exclude contracts, it's clear that that entire 2.8 section would only make sense in the context of executory contracts because it talks about cures. Cures don't relate to non-executory contracts. It talks about adequate assurance, which is a provision of Section 365 of the Bankruptcy Code, which only relates to executory contracts. It talks about consent to transfer, which is another thing which is dealt with by 365 of the Bankruptcy Code. So even if it wasn't fixed in the amendment, and I believe it was fixed in the amendment, a common-sense reading of this provision means that it can only apply to executory contracts and the assumption process that bankruptcy courts go through with executory contracts because this Section 2.8 lays out that process. So for the Y movie to rely on that provision in 2.8 as their entire argument for assumption of these obligations is just a fallacy because not only was it fixed in the amendment, but you look at this Section 2.8, it clearly can only apply to executory contracts because it walks through Section 365 and how it operates in the Chapter 11 case. Back to one question. Why were some of the investment agreements in and some left out? Was that just an oversight by people? It was just an oversight, Your Honor. There were literally hundreds of contracts attached to these agreements, and they tried to exclude them all. They may have missed one, but if you look at that, I mean, it's sort of like when we were in front of the Bankruptcy Court, I said they're trying to, you know, it's like a gotcha, okay? Trying to say that you tripped, you know, you made a footfault, and now you've assumed this obligation. Yet if you look at everything else in this asset purchase agreement and in the sale order, the great weight of the evidence and all the parties' indications are that this type of obligation was excluded. Well, that's why you have 2.4, and it's notwithstanding language because you might have an oversight, but we put in a notwithstanding clause, and then you have language saying excluded liabilities. Yes, Your Honor. And that is consistent with the effectuating provisions of the sale order in AA where the language of the order is even broader than these categories, okay? So this is a protection for a buyer who comes. So what one movie is trying to do is upset all the assumptions that go into a bankruptcy sale, okay? Because when you have a sale of the assets of a company of this magnitude and this complexity, for buyers to be worried about a footfall in these notices would destroy the process of bankruptcy sales because the bankruptcy sales, as is found in the order, and as this bankruptcy court recognized, it is all about separating the assets from the liabilities. And the order is clear here. The APA is clear. The APA has categories that it is clearly excluding, and then the order has even broader language. I would defer, Your Honors, to the order section, paragraph AA. So this bank, and for one movie to disregard the fact that there is a broad waiver in every one of these agreements that listed these, I mean, every one of these notices that lists the order is just disingenuous. I mean, the facts are here. And the other thing that shows that they were just trying to, that this is a late-created argument, is the fact that they did not appear in the bankruptcy case to make this argument until after the language in the Cone Agreement where they felt gave them a leg up, okay, and saying that this is a non-executory contract and the court ruled that there was an obligation. Now, these contracts are very different because, as Mr. Birmingham testified, there was no intellectual property that was transferred under these agreements. One movie, and it's Mr. Berman's testimony, you know, that one movie had no intellectual property rights, had no ownership rights. So it's very different than a work-for-hire agreement, okay? So the fact that they knew that these were not assumed was clear, you know, up until they saw something in the Cone Agreement. And once again, I would point you on the fact that the Cone and the other talent party agreements are different because there is a contractual, there was a change to the APA where those post-closing obligations, participation payments, were assumed. The post-closing for the time that Spyglass enjoyed the exploitation of this intellectual property. There's no corresponding provision with respect to why movie, and common sense dictates that there wouldn't be because there's no benefit. And if you reviewed Mr. Birmingham's testimony, it's clear. There was no benefit to the Weinstein companies of these agreements once the money was provided. Any further questions, my colleagues? All right. Thank you. Your Honor, I'd like to respond briefly to a few points that Mr. Califano raised. The first is he relied heavily on the Second Amendment and the change to the term, a contract to make it an executory contract to make his point. But he was incorrect in what the Second Amendment did. If you look at the Second Amendment, and there's a red line in the record that shows exactly what term contracts were modified at AA 948, the reference to the contracts that could be added to the list of available contracts to create the assumed contract list was not modified. It was only a subsequent reference to contracts that could be where the buyer had the right to designate them for assumption or rejection. That was the change, not the earlier provision. Could I just ask you a question about what I think is your strongest point? And maybe I'd like to hear your response, you know, responses against your strongest point. I think your strongest point is this clause about six lines down on 2.8a that says any contracts not that you can add any contracts not included. But at least it looks to me like the first part of the definition of available contracts says section 2.8a of the disclosure statement only will contain executory contracts. So it struck me as a schedule that by definition can only include executory contracts. So when we read later on what can be added to a schedule, that schedule definitionally can only include executory contracts. So isn't the best reading of that line about six lines down that when it says you can add any contract, well, the only way that that contract can be added to a schedule of only executory contracts is if that contract were itself executory. So what do you say to that? Your Honor, I don't think that's the correct reading of this section. This section sets forth the schedule of assumed contracts, which are the contracts that Spyglass was going to take, executory and non-executory. There's no other place in this agreement where they put contracts that they're going to take. The Cohn agreement was on here, by the way. There's not a specific provision that sets out in this agreement that the Cohn agreement gets special treatment. We know that the assumed contract list includes executory and non-executory, and they meant it by looking at, for example, the definition of excluded assets in Schedule 2.2H. Schedule 2.2H used to say, or after the amendment says, what's excluded are all executory contracts that are not assumed contracts. If they wanted to exclude contracts, they didn't have to make that change. Contracts would have picked up assumed and non-executory contracts. This is the one place, and this is Spyglass's drafting that they have to live with because they're the drafters of this agreement, not us. This was the one place where they bundled together all contracts and decided that for some, they would have additional flexibility to assume and reject them, and for others, they would be on the list. And we know that because they created the list themselves. They then used Section 363 to acquire the Cohn contract, which was on that list, and agreed that, and the Bankruptcy Court ruled that if you're going to take that Cohn contract, you're going to take a contract that's non-executory under Section 363 of the Bankruptcy Code, you have to take all the prospective obligations, and that's what they agreed to do. We're not asking them to pay for obligations from the beginning of the world until the petition date under these investment agreements. We're saying that we should be treated like the Cohn agreement, where they have an obligation prospectively once they take the contract. You had asked about, as well, bear with me one second. I want to address one other point. On the 2.4 for excluded liabilities. The notwithstanding clause, is that it? It says, notwithstanding any provision in this agreement, the buyer is assuming only the assumed liabilities, and what they reference in two point, you know, and they specifically identify that what an excluded liability is under, bear with me for one second. Well, under C for indebtedness for borrowed money, which we addressed, and then F, all liabilities under any contract that is not an assumed contract. So if it's an assumed contract, by definition, they're picking up the liability. They didn't say all liabilities under any non-executory contract or only executory contracts. They said all contracts, and that feeds directly into that sixth line of the two point A that we were talking about. Two other quick points, your honor. First is, can I just follow up on one point? Are you going so far as to say that the omission of executory from any contracts in that sixth line actually operated to their benefit? To the extent that it gave them additional flexibility and that it wasn't just an oversight that was everyone's meaning but not expressed in, this isn't some after the fact super close read, but this actually had functional value at the time. It played out through additional flexibility that could be viewed as consideration for the whole deal. We read this, your honor, as they decided that it was to their benefit to add non-executory contracts to the assumed contract list. They made that decision. They decided that that was to their benefit to make sure that parties, like Cohen, couldn't agree that their non-executory contract wasn't taken. They repeated that by creating the schedule, by not taking the non-executory contracts off the schedule, by saying, by putting in different places, like I just read, that liabilities, if you're a contract not on the assumed contract list, we weren't going to take you. They tried to make it abundantly clear that if you were on that list, executory or not, you had certain rights post-closing, and if you weren't on that list, you weren't. Well, I know I'm preventing you from getting your next point, but what about kind of the overall context of 2.8 that includes things like cure amounts and other provisions that strike me at least as is not really, you know, they'd be pretty superfluous if it was just non-executory contracts. Am I thinking wrong there? No, I agree with you 100%. If this provision only dealt with non-executory contracts, as you said, those provisions would be superfluous. But it doesn't. It deals with executory and non-executory contracts. And the provisions that you're referring to deal with how executory contracts on the assumed contract list are going to be treated and the rights that Spyglass would have under that. So these provisions still have values at least as long as there's executory contracts on the list or the potential for executory contracts on the list. That's correct, John. This works, you know, hand in glove. They wanted to make sure, I mean, we weren't in the room when it was drafted or negotiated, but it's clear from the language that the first bundle of contracts that the seller put together were executory contracts. And then the parties agreed that subsequently Spyglass could add any contract to that list. But with respect to the executory contracts that were defined as the available contracts and any other executory contracts that were added, Spyglass wanted to make sure that it had certain additional rights with respect to those executory contracts. It would have been easy for Spyglass to say, to put executory in front of every reference to contract in Section 2.88. Spyglass didn't. Spyglass could have created a separate schedule of non-executory contracts and dealt with them any way they wanted. And they didn't. This is their contract, and we're just reading what they wrote and what the bankruptcy court approved. I mean, at one level, though, isn't there? I mean, there's a little oddity to this with the fact that it might not feel like they're buying much other than liabilities. Your Honor, Spyglass, and I think this is this line of questioning, unfortunately, conflates what's an asset and what's a liability. Under the contract, if they identify something as an asset, they take it. Then they're obligated for certain liabilities that flow from that asset. It's no different. That's just so you – that's classic purchasing to make sure that you're actually buying what you – There's no difference, Your Honor, than if they took a piece of real property and listed it as an asset, and there was environmental contamination on the property. They took the asset. How they deal with the liability associated with the asset may be treated under the bankruptcy code or under the contract so that, lo and behold, it turns out later they have buyer's remorse. But they're stuck with the asset and the liability that flows from that asset. And we know that because they acquired these contracts. They put them on the list. They treated them exactly like the Cohen Agreement. And when they were fighting over the Cohen Agreement, they admitted to the bankruptcy court. And the bankruptcy court ordered that they had to pick up liabilities associated with these assets that they were acquiring under Section 363 of the bankruptcy code. Can I just run through, see if I understand something here? To be an assumed contract under 2.8a, it must be an available contract. And available contracts under 2.8a must be executory in the first sentence of 2.8a, right? Your Honor, you read 2.8a, the first sentence, correctly, but your premise was incomplete. Because to be an assumed contract, the first step was that there was a list of available contracts, which were executory. Next, in the next sentence, the parties agreed that any contract could be added to that list, executory and non-executory. And then the definition, and so once that schedule is put together, then there's the definition of what an assumed contract is. They could have called it just the contract list, but they used a colloquial, non-binding term and call it assumed contract. But it certainly is not limited by the terms of this agreement. Back up with me. To be an available contract, it must be a list of executory contracts, correct? Correct. And if you're not an available contract, you can't be an assumed contract, can you? Yes, you can be, Your Honor. Because the first step of available contracts is to create a baseline group of contracts. Those are executory. But the language goes on to be… Let me read that. Prior to the closing date, buyer in its sole discretion, this is down further in 2.8a. Right. By written note, it shall designate in writing which available contracts. And you can't be available if you're non-executory because you can't… Because available is a subset of assumed contracts, and assumed contracts have to be executory. So it would seem that that avenue is barred. I could think of another avenue to go your way. Could a purchased asset… Could you have a purchased asset? The problem I hit there is you can't be a purchased asset if you're an excluded asset. Excluded asset is under 2.2, and that refers to Schedule 2.2. And that says in Schedule 2.2, all contracts that are not assumed and assumed contracts under 2.8a must be executory. Your Honor, I think even just looking at Schedule 2.2 helps prove the point and gives our reading more legs. Because if it was true that only assumed contracts, only executory contracts could be assumed contracts, they wouldn't have needed to modify in a separate amendment, Section 2.2h, to provide all executory contracts that are not assumed contracts are excluded assets. They could have just rested on contracts, but they decided to change that there as opposed to changing it in the sixth line of 2.8a. And they have no explanation as to why, as of the closing, all of the investment agreements were on that assumed contract list, and the cone agreements were on the assumed contract list. Right now, this is not a gotcha. This is a buyer's remorse situation where they decided that they didn't want to keep pay what's obligated under those contracts on a prospective basis. Their remedy for mistake or error or whatever other theory they come up with would have been against the Weinstein companies. They negotiated a reduction in purchase price to take into account the amendment, the second amendment, and they parsed through the language very carefully, and they specifically left the fact that contracts, any contract, could be added to the assumed contract list and never took our contracts off the list. And based on the plain reading of the agreement and their own drafting and their own schedules, the investment agreements are purchased assets, and we would respectfully request that you reverse the district court and so on. So let me go back into schedule 2.2, excluded assets. Excluded assets are all contracts, which, as you say, is a very, very broad term. Actually, Your Honor, I'm sorry. I think you may be looking at the non-modified version. The non-modified version of the agreement pursuant to the second amendment, that now reads all executory contracts, not contracts. That's at AA1021. That's the red line version showing the change. So Clause H of 2.2 of the agreement is hereby amended, all executory contracts. Okay. They're not assumed contracts. So somehow you're claiming that because you weren't executory, through the back door somehow it is an assumed contract because you're not excluded. Is that what you're saying? Your Honor, it's not actually through the back door. It's through the front door of Section 2.8A. They provided that the assumed contract – So are you saying if you're not excluded, you're included? There are binary choices under the – the way this contract is set up, Your Honor, is that there's a binary world. If you're an asset, you're either a purchased asset or an excluded asset. And since these agreements are assets, they were on the debtor's schedules. The spyglass put them on a list of purchased assets. They, by definition, are purchased assets if they're not an excluded asset. And they don't fall into any category of the excluded assets on Schedule 2.2 because under H, which Mr. Califano and I think you were initially referring to, it only applies to executory contracts that are not assumed contracts, which goes back to the front door of 2.8A, which made these contracts assets and they're purchased assets. And because they're purchased assets, they're not excluded assets. And correspondingly, given that they're an asset, if they're not an excluded asset, they're a purchased asset. Okay, that's what I said. Script all the way, your argument is if they're not excluded, then they are included. Yes, Your Honor. All right. Thank you. Any further questions of my colleagues? No. If not, then I would ask counsel if a transcript could be prepared to this oral argument and to split the cost if you would, please. Yes, Your Honor. I thank both counsel for being with us. Anytime it's bankruptcy, I get semi-interested. Thank you, Your Honor. Much appreciated.